UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Joseph Bourget, d/b/a
Bourget Amusement Company,
    Plaintiff

    v.                                Case No. 11-cv-88-SM
                                      Opinion No. 2013 DNH 129
Hillsborough County 4H
Foundation, Inc.,
NCI Group, Inc.,
General Steel Domestic Sales, LLC,
    Defendants


**O R D E R**

Plaintiff, Joseph Bourget, d/b/a Bourget Amusement Company, brings this suit seeking damages for injury to his business equipment resulting from the collapse of a pre-fabricated steel building. He sues the owner of the building, Hillsborough County 4H Foundation ("the Foundation"), and the building's manufacturer, NCI Group, Inc. ("NCI"), and distributor, General Steel Domestic Sales, LLC ("General Steel"). All defendants have moved for summary judgment, document nos. 29, 30, 32. Plaintiff objects, arguing that material factual disputes preclude entry of summary judgment as to any defendant.

For the reasons discussed, summary judgment is granted in favor of General Steel and NCI. The Foundation's motion, however, is necessarily denied on this record.

**Standard of Review**

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted). Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally

Fed. R. Civ. P. 56(c).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, speculation, and unsupported conclusions.  See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).  See also Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## Background

Except where noted, the following facts are undisputed.  The Foundation is a charitable organization.  It owns fairgrounds in New Boston where it hosts various agricultural events and activities.  In March of 2000, the Foundation contracted with General Steel for the purchase of a prefabricated metal building.  The Foundation intended to use the building for fairs, animal shows, summer events, and winter storage.  In March of 2001, General Steel delivered a building shell, manufactured by NCI, to the Foundation's fairgrounds.  Foundation volunteers erected the building in the summer of 2002.  By November of the same year the building was completely enclosed, although it did not have doors.  The Foundation would continue to improve the building, with

amenities such as electricity and water, until September of 2003. The Town of New Boston issued a certificate of occupancy on September 4, 2003.

Joseph Bourget operated an outdoor amusement business, or carnival, known as Bourget Amusement Company. During construction of the Foundation's building in 2002, Bourget, or one of his employees, approached the Foundation's Chairman, William Grigas, about storing Bourget's equipment in the building for the 2002-03 winter. In or about June of 2002, Bourget and Grigas agreed that Bourget would store his equipment in the building, for a fee, during the months of October, 2002 through April, 2003. The agreement was memorialized in a document called the "Winter Rental Agreement" (the "Rental Agreement"). Bourget moved his equipment into the building in November of 2002.

Bourget continued to rent the building each winter until 2008. Grigas says that during those years, it was customary for him, each fall, to give Bourget a written agreement for the upcoming winter storage season and to discuss with him the agreement's terms. Document 29-10, at 3. The written agreements[1] contain the following provisions:

---

[1] The Foundation has been unable to locate rental agreements for the 2002-03 and 2005-06 winters.

4

- "It is understood and agreed that the Foundation shall not be responsible for damage to any vehicle or property due to natural or manmade causes including fire and other casualty losses."

- "It is understood that the Lessor [the Foundation] shall not be responsible for loss of, or damage to, any vehicle or property due to any cause, including fire and other casualty losses."

- "The Lessee [Bourget] herein agrees to maintain comprehensive property damage insurance coverage on the stored units and agrees to indemnify and hold harmless the Lessor [the Foundation] for any loss of, or damage to, any stored property."

None of the written rental agreements contain an automatic renewal provision.

Grigas avers that the parties' routine for the fall of 2007 was no different than in past years.  Document 29-10, at 3.  He says he gave Bourget a written agreement and discussed the terms with him.  He says that the agreement included the usual exculpatory language and a requirement that Bourget procure insurance.  Id.  He admits that Bourget never returned a signed copy of the agreement to the Foundation, although he says he gave Bourget a second copy in February of 2008.  Id.

Bourget confirms that in the fall of 2007, he and Grigas discussed the terms of storage for 2007-08, but he says the agreement reached was an oral one.  Document no. 34-9, at 2;

5

document no. 34-10, at 2. He also denies that he agreed to any exculpatory terms or to obtain insurance coverage. Document no. 34-9, at 2. He does not deny that Grigas gave him unsigned copies of an agreement for the 2007-08 storage season.

Bourget moved his equipment into the building for the winter 2007-08 season. On March 2, 2008, the building's roof collapsed under the weight of snow, damaging some of Bourget's equipment. Bourget did not have property damage insurance. Grigas avers that following the collapse, Bourget told him that he (Bourget) knew he was required to have insurance, but that he had not had the money to buy it. Bourget does not recall the conversation.

In February of 2011, Bourget brought this suit against the Foundation, General Steel, and NCI. He alleges that the Foundation breached its rental agreement and that it was negligent. He also asserts claims for negligence and breach of warranty against General Steel and NCI, alleging deficiencies in the design, selection, specification, and manufacture of the building. He seeks compensation for damage to his equipment and resulting loss of business income and business value.

I.  Bourget's Claims Against the Foundation

The Foundation seeks summary judgment in its favor on both the breach of contract and negligence counts. It says there is no material dispute that the 2007-08 rental agreement required Bourget to carry insurance and exculpated the Foundation from any liability to Bourget for damage to his property and loss of business income.[2] The Foundation also argues that the exculpatory terms are not against public policy, and that, should Bourget prevail after all, damages assessed against the Foundation must not exceed $250,000. See RSA 508:17 (imposing damages cap for negligence of non-profit volunteers).

   *A. Terms of the Rental Agreement*

"For a contract to be valid, there must be a meeting of the minds on all essential terms of the contract, meaning that the parties must have assented to the same contract terms." Chase Home for Children v. New Hampshire Div. for Children, Youth and Families, 162 N.H. 720, 727 (2011). Whether the parties assented to the same contract terms is a question of fact, id., and when the facts are disputed, the question "is to be determined by the

---

[2] Bourget's argument that the statute of frauds, N.H. RSA 506:1, renders the exculpatory terms unenforceable, is without merit. The entire contract is outside the statute because the parties, at the very least, partially performed their duties under it. See Tentindo v. Locke Lake Colony Ass'n, 120 N.H. 593, 599 (1980) (part performance takes the agreement "out of the Statute of Frauds").

7

trier of fact." Syncom Indus., Inc. v. Wood, 155 N.H. 73, 82 (2007).

Without question, the Foundation has produced weighty and substantial evidence that, with respect to the 2007-08 winter season, the parties agreed to the same exculpatory terms and to the same requirement that Bourget procure insurance, as in the past. And, although Bourget's contrary evidence appears less weighty and less substantial, nevertheless, it is (barely) sufficient to create a material factual dispute. As noted, Bourget says that he and Grigas did not agree to those terms. In addition, that the 2007-08 contract form, which included the insurance requirement and exculpatory language, was neither signed by Bourget nor returned to Grigas, gives rise to a supportable inference that Bourget did not accept those terms.

The fact that Bourget has not adequately denied Grigas' averment about their post-collapse conversation is not outcome determinative. Even if it is undisputed that Bourget told Grigas that he knew he should have obtained insurance, that fact is not conclusive evidence of what the parties understood the terms to be at the time of contract formation. No doubt, it is very strong evidence supporting the Foundation's version of the facts, but, in light of other contradictory evidence – Bourget's claim

that he entered into an oral contract that did not include a requirement that he obtain insurance — it is not enough to support entry of summary judgment.

For these reasons, the court necessarily finds that there exists a material factual dispute with regard to the terms of the 2007-08 rental agreement.

B.   *Public Policy and Damages Cap*

Because there is a factual dispute regarding the agreement's terms, the additional questions the Foundation poses — each of which depend on resolution of that factual issue — need not be answered at this juncture.  Although this court <u>may</u> determine whether facts relevant to those additional issues are undisputed, it declines to do so.  <u>See</u> Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case.").

II.  <u>Bourget's Claims Against the Distributor and Manufacturer</u>

General Steel and NCI seek summary judgment in their favor, on all counts, on the ground that the claims against them are

time-barred under New Hampshire's construction statute of repose, N.H. Rev. Stat. Ann. ("RSA") ch. 508:4-b, I.

> The statute provides:
>
> Except as otherwise provided in this section, all actions to recover damages for injury to property, injury to the person, wrongful death or economic loss arising out of any deficiency in the creation of an improvement to real property, including without limitation the design, labor, materials, engineering, planning, surveying, construction, observation, supervision or inspection of that improvement, shall be brought within 8 years from the date of substantial completion of the improvement, and not thereafter.

RSA 508:4-b, I.

"Substantial completion" means that "the construction is sufficiently complete so that an improvement may be utilized by its owner or lawful possessor for the purposes intended."  RSA 508:4-b, II.

There is no dispute that the building, here, was an "improvement" to realty, and that Bourget seeks damages for "injury to property" and "economic losses" arising out of alleged deficiencies that fall within the purview of the statute.  The parties disagree, however, as to when the statutory period began to run against Bourget; that is, they disagree as to when the building was "substantially complete."  NCI and General Steel argue that it was substantially complete (thus starting the repose clock) in November of 2002, when Bourget first stored his

10

equipment in the building. If defendants are right, then Bourget had until November of 2010 to bring suit. Bourget did not file suit until February of 2011. Bourget counters that his claims against NCI and General Steel were timely, arguing that the building was not substantially complete until sometime late in 2003. He points to evidence giving rise to a supportable inference that the building was not usable for all purposes intended by the Foundation (such as for warm weather activities) until that later date.

Bourget does not deny that both he (the "possessor") and the Foundation (the "owner") intended the building to be used for winter storage. That is the relevant intended use for purposes of this case. It is irrelevant to the question of intended use in this case that the Foundation also intended to use the building for additional purposes, and that it continued to improve the building to make those additional uses possible. To hold, as Bourget urges, that the statutory period did not begin, for him, until the building was usable for purposes unrelated to his use, would undermine the statute's goal of "reliev[ing] potential defendants from anxiety over liability for acts committed long ago." Big League Entm't, Inc. v. Brox Indus., Inc., 149 NH 480, 484 (2003) (quotation marks omitted).

The question, then, is whether the building was usable for its intended purpose – winter storage - more than eight years before Bourget filed suit. The New Hampshire Supreme Court's decision in Lamprey v. Britton Const., Inc., 163 N.H. 252 (2012) resolves that question. In Lamprey, the plaintiff homeowner occupied her newly built home before a certificate of occupancy had issued, and before the kitchen was complete. More than eight years after she assumed occupancy, she sued several contractors for deficiencies in the structure. The State Supreme Court held that her suit was time-barred under New Hampshire's construction statute of repose. It reasoned:

> If a party <u>actually uses</u> the improvement for the purpose intended, such use necessarily proves that the improvement can be used for that purpose, and the statutory period begins. Thus, while the factors the plaintiff urges us to consider might be relevant when considering whether an unused improvement could have been used for certain purposes, <u>once such use actually occurs, a plaintiff cannot rely upon other factors to argue that the use was impossible.</u>

Id. at 259 (emphasis added and omitted).

It is undisputed, here, that Bourget began using the building for winter storage in November of 2002. Thus, for purposes of Bourget's claims against NCI and General Steel, the building was substantially complete at that time. Bourget, therefore, was required to bring his claims against those defendants by November of 2010, which he did not do. All claims

against NCI and General Steel are untimely and statutorily barred.

## Conclusion

For these reasons, NCI's and General Steel's motions for summary judgment, document nos. 30 and 32, are granted. The defendant Foundation's motion for summary judgment, document no. 29, is necessarily denied on this record.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 27, 2013

cc: Paul F. Cavanaugh, Esq.
    Pamela E. Berman, Esq.
    Kevin A. Koudelka, Esq.
    Michael D. Richardson, Esq.
    Robert E. Murphy, Jr., Esq.
    Erin J. M. Alarcon, Esq.