UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Joseph Bourget,
d/b/a Bourget Amusement Company,
     Plaintiff

     v.                            Case No. 11-cv-88-SM
                                      Opinion No. 2014 DNH 225
Hillsborough County
4H Foundation, Inc.,
     Defendant

**O R D E R**

In the fall of 2002, Joseph Bourget, a carnival operator
d/b/a Bourget Amusement Company, began storing equipment and
carnival rides in a building owned by the Hillsborough County 4H
Foundation (the "Foundation").  The roof collapsed in 2008,
damaging some of Bourget's rides, rendering them unusable in the
upcoming season.  He brought this action, seeking damages from
the Foundation, as well as the building's manufacturer (NCI
Group, Inc.), and its distributor (General Steel).  By prior
order, the court entered summary judgment in favor of both NCI
and General Steel.  Pending before the court is the Foundation's
motion for partial summary judgment, in which it asserts that
even if it is found liable to Bourget, any recovery would be
statutorily capped at $250,000.  Bourget disagrees and objects to
the Foundation's motion.

For the reasons discussed, the Foundation's motion for partial summary judgment is granted.

## Standard of Review

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).  See also Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011).

## Background

The Foundation is a Section 501(c)(3) charitable organization incorporated in the State of New Hampshire.  It owns property, the fairgrounds, in New Boston, New Hampshire, where it hosts various agricultural events and related activities.  In the

spring of 2000, the Foundation purchased a prefabricated metal building from General Steel.  The following year, General Steel delivered a building shell, manufactured by NCI, to the Foundation's fairgrounds.  Foundation volunteers erected the building during the summer of 2002, and improvements (such as electricity and water) were completed by the fall of 2003.

Bourget operated an outdoor amusement business known as Bourget Amusement Company.  Beginning in October of 2002, the Foundation (acting through its chairman, William Grigas) agreed that, in exchange for a fee, Bourget would be allowed to store his carnival equipment in the new building during the winter months.  The parties' agreement was memorialized in a written contract known as the "Winter Rental Agreement."  Thereafter, Bourget stored his equipment in the Foundation's building each winter through March of 2008.

Typically, the parties executed a new (though substantially similar) written agreement each fall to govern their relationship for the upcoming winter.[1]  And, the parties appear to agree that

---

[1]     Neither party has been able to locate a copy of the Winter Rental Agreement for the 2002-03 or 2005-06 winters, though they appear to concede that such an agreement was actually signed.

each of those contracts contained the following (or substantially
similar) language:

> It is understood and agreed that the Foundation shall
> not be responsible for damage to any vehicle or
> property due to natural or manmade causes including
> fire and other casualty losses.

> It is understood that the [Foundation] shall not be
> responsible for loss of, or damage to, any vehicle or
> property due to any cause, including fire and other
> casualty losses.  [Bourget] agrees to maintain
> comprehensive property damage insurance coverage on the
> stored units and agrees to indemnify and hold harmless
> the [Foundation] for any loss of, or damage to, any
> stored property.

"Winter Storage Agreement" (document no. 29-11).


In the fall of 2007, Grigas and Bourget discussed the terms
of Bourget's use of the building for the upcoming winter.  And,
as was the case in prior years, Grigas presented Bourget with
another Winter Rental Agreement for him to sign.  But, Bourget
never signed that document and he claims the parties'
relationship that year was governed instead by an oral agreement
between him and Grigas.  Bourget denies that he agreed to the
exculpatory language that had been employed in the prior written
agreements or that he assumed any obligation to obtain casualty
insurance with respect to the winter 2007-2008 term.

4

On March 2, 2008, the building's roof collapsed, apparently due to the weight of accumulated snow.  Some of Bourget's equipment was damaged.  He did not have property damage insurance.  Grigas asserts that shortly after the collapse, Bourget admitted that he knew he was required to maintain insurance, but said he could not afford it.  Bourget says he does not recall that conversation.

Still to be resolved in this case are Bourget's claims against the Foundation for negligence and breach of the parties' rental agreement.  As noted above, the Foundation moves for partial summary judgment on a narrow legal issue, asserting that even if it is found liable to Bourget, any recovery would be statutorily capped at $250,000.

## Discussion

Prior to trial, the precise nature of Bourget's legal claims (and their essential elements) will obviously have to be clarified.  But, at this stage, the parties seem content to accept them as presented in the complaint - that is, as a negligence claim (count one) and a breach of contract claim (count two).  The language employed in those counts is virtually identical and both claims turn on the Foundation's alleged negligence: it's failure to "keep the metal building in a

reasonably safe condition" (which Bourget claims was negligent) and its failure to "provide the metal building in a reasonably safe condition" (which Bourget claims amounted to a breach of the parties' contract).  <u>See</u> Complaint at paras. 31 and 38.[2]

I.   <u>Liability of a Nonprofit Corporation</u>.

The Foundation asserts that, under applicable New Hampshire law, because it is a nonprofit corporation, any damages that Bourget may recover against it for the alleged negligence of one (or more) of its volunteers would be statutorily capped at $250,000.  The relevant statute provides, in part, as follows:

> Liability of a nonprofit organization for damage or injury sustained by any one person in actions brought against the organization <u>alleging negligence on the part of an organization volunteer</u> is limited to $250,000.  Such limit applies in the aggregate to any and all actions to recover for damage or injury sustained by one person in a single incident or occurrence.

N.H. Rev. Stat. Ann. ("RSA") 508:17 II (emphasis supplied). Bourget attempts to avoid the seemingly unambiguous language of

---

[2]    Of course whether a claim is one for breach of contract or one sounding in tort turns on the substance of that claim, not on how the plaintiff has labeled it.  <u>See, e.g.</u>, <u>J. Dunn & Sons v. Paragon Homes of N.E., Inc.</u>, 110 N.H. 215, 217 (1970) ("The determination of whether an action is on a contract or in tort is not controlled by the form of the action but by its substance. . . . The fact that the duty alleged to have been violated is related to obligations growing out of or coincidental with a contract will not prevent the action from being one in tort.").

that statute by asserting that he has not alleged that any of the
Foundation's <u>volunteers</u> were negligent; instead, he says the
<u>Foundation itself</u> was negligent:

> Mr. Bourget has not alleged negligence on the part of
> an <u>individual</u> volunteer.  Rather, Mr. Bourget has
> alleged that the defendant Foundation itself, a
> corporate entity, failed to determine that the metal
> building was constructed with appropriate
> specifications for the geographic area and failed to
> keep the building in a reasonably safe condition.

Plaintiff's Memorandum (document no. 68-1) at 7 (emphasis in
original).


    In Bourget's view, because he has not lodged a negligence
claim against any individual volunteer in this suit, and because
he has not specifically alleged "negligence on the part of an
organization volunteer," RSA 508:17 II, with respect to his
claims against the Foundation, the statutory cap on damages
simply does not apply.  <u>See, e.g.</u>, Plaintiff's Memorandum at 9
(asserting that the Foundation, as landlord, has a non-delegable
duty to maintain its premises in a reasonably safe condition and
claiming that it "could not delegate its duty to maintain its
premises to a third-party, such as a volunteer").  He is
mistaken.

It is well-established and fully accepted that corporate entities are creatures of statute and can only act through their agents, employees, or (as is the case here), their volunteers. See, e.g., Pandora Indus. v. State Dep't of Revenue Admin., 118 N.H. 891, 895 (1978); State v. Wentworth, 118 N.H. 832, 840 (1978).  Consequently, Bourget's claims necessarily rest on the unavoidable, if implicit, assertion that one or more of the Foundation's volunteers, acting on behalf of the Foundation, was or were negligent.  The statutory cap on damages plainly applies.

Parenthetically, Bourget's references to a possible bailment-for-hire (also a negligence-based claim) are equally unavailing.  Even if his complaint could arguably be construed to assert such a cause of action, the statutory cap for claims sounding in negligence would still be implicated.

II.  Proper Scope of the Governing Statute.

Finally, Bourget asserts that the court should construe the relevant provisions of RSA 508:17 II narrowly, in a manner that would, under the circumstances presented here, deprive the Foundation of the benefit of the statutory liability cap.  The statutory provisions at the core of Bourget's argument address the tort liability exposure of individual volunteers, and provide:

> I.  Any person who is a volunteer of a nonprofit
> organization . . . shall be immune from civil liability
> in any action brought on the basis of any act or
> omission resulting in damage or injury to any person if
> [certain conditions are met].
>
>               * * *
>
> IV.  Volunteer activity related to transportation or to
> care of the organization's premises shall be <u>excepted
> from the provisions of paragraph I of this section</u>.

RSA 508:17 I and IV (emphasis supplied).  In other words, the
statute carves out limited exceptions to the otherwise broad
personal tort immunity afforded to <u>volunteers</u>.  Volunteers are
not immune from liability with respect to claims arising out of
their activities related to transportation and/or care of the
nonprofit organization's real property.

Bourget asserts (somewhat cryptically) that RSA 508:17 IV
also ought to be read to include an exception to the limitation
on liability afforded to nonprofit organizations.  That is to
say, he claims that the exceptions to volunteer immunity from
tort liability ought to be read as also carving out an exception
to the damages cap when a nonprofit organization is held liable
based upon volunteer driving or premises activity.  Specifically,
Bourget argues:

> RSA 508:17 does not extend to [sic] its protection of
> the volunteer himself or herself to volunteer activity
> related to care of the organizations' premises.  RSA

508:17-IV.  Therefore, it is consistent with the
language of RSA 508:17 not to apply the limited
liability under RSA 508:17-II to the defendant's own
negligence, and it is consistent with New Hampshire
case law not to apply the limited liability to the
defendant's duty as a landowner.

Plaintiff's Memorandum at 7.


While Bourget's argument is imaginative, it is essentially a

policy-based one that is better made to the New Hampshire

legislature, not this court.  That section of the statue capping

the liability exposure of nonprofit organizations is clear,

unambiguous, and unconditional.  Section IV plainly creates an

exception only with respect to the personal liability of

volunteers (by explicitly referring to Section I, and not Section

II).  It does not admit of an (implicit) exception to the cap on

damages available from nonprofit organizations for claims arising

out of property maintenance, and this court will not craft a

distinct exception when the legislature plainly could have but

did not.  See, e.g., Dennis v. Town of Loudon, 2012 WL 4324932

*9, 2012 DNH 165 (D.N.H. 2012) ("[W]here, as here, a statute's

language is plain and unambiguous, the court need not look beyond

it for further indication of legislative intent, and will not

consider what the legislature might have said or add language

that the legislature did not see fit to include.  Similarly,

speculation as to the statute's 'purpose,' divorced from

10

reference to the text itself and the 'overall statutory scheme,' has no place in the court's analysis.") (citations and internal punctuation omitted).  See also Ettinger v. Town of Madison Planning Bd., 162 N.H. 785, 788 (2011) ("We apply the ordinary rules of statutory construction to our review of [the statute], and we accordingly first look to the plain meaning of the words used.  Words and phrases are construed according to the common and approved usage of the language unless from the statute it appears that a different meaning was intended.") (citation omitted).

## Conclusion

For the foregoing reasons, as well as those set forth in the Foundation's legal memoranda (documents no. 67-1 and 69), its motion for partial summary judgment (document no. 67) is granted. Should Bourget recover damages from the Foundation at trial, those damages are, by statute, capped at $250,000.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

October 24, 2014

cc:  Paul F. Cavanaugh, Esq.
     Erica M. Caron, Esq.
     Heather M. Gamache, Esq.
     Robert A. Bertsche, Esq.

11